UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Jan Kuklenski,<br><br>    Plaintiff,<br>v.<br><br>Medtronic USA, Inc.,<br><br>    Defendant. | Case Type: Employment<br>Court File No.: 22-cv-438<br>Judge: _____<br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW the plaintiff, Jan Kuklenski, by her undersigned counsel, for her Complaint against Medtronic USA, Inc., and respectfully states and alleges as follows:

### INTRODUCTION

1. This action arises out of Defendant Medtronic USA, Inc.'s wrongful termination of Plaintiff Jan Kuklenski's employment as a Senior Director under the pretext of a companywide reorganization. Plaintiff, now 58, suffered from age discrimination; disability discrimination; retaliation under the FMLA; the Minnesota Whistleblower Act; and breach of a promise by Defendant, on which she relied, when she was terminated under the guise of a reorganization policy only to have Defendant proceed to fill her position with a substantially younger individual with inferior job performance skills and qualifications.

### PARTIES

2. Plaintiff is a resident of Michigan and was 58 years old when Defendant terminated her employment.

3. Defendant Medtronic USA, Inc. ("Defendant") is a business corporation with its principal place of business located in the State of Minnesota.

1

4.      At all times relevant hereto, Plaintiff and Defendant were "employee" and "employer," respectively, within the meaning of the Minnesota Human Rights Act. ("MHRA"). Minn. Stat. § 363A, subds. (15) and (16), and the Minnesota Whistleblower Act ("MWA"), Minn. Stat. § 181.932.

## JURISDICTION AND VENUE

5.      This is an action brought to remedy Defendant's discriminatory and retaliatory conduct directed at Plaintiff, including claims based on her age. Defendant engaged in disparate treatment of older employees with regard to the terms and conditions of employment and termination. Defendant engaged in a pattern or practice of age discrimination in connection with terminations, promotions, selection process, and opportunities for open positions and hiring.

6.      This action arises under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq.  This court has original jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331-32 and 42 U.S.C. § 2000e-5(f)(3). Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, and facts giving rise to Plaintiff's claim occurred in this District.

7.      Plaintiff further invokes the supplemental jurisdiction of this Court to consider claims under state law.  This Court has supplemental jurisdiction under Title 28 U.S.C. § 1367(a) to adjudicate Plaintiff's state law claims. Plaintiff seeks relief under the MHRA, Minn. Stat. § 363A.01, *et seq*., and Minn. Stat. § 181.932, *et seq*. Plaintiff routinely visited Minnesota for work over the course of her career with Defendant; in her 22 years of employment, Plaintiff was physically present in Minnesota for work approximately 20% of the time.

8.      When she was terminated, Plaintiff regularly reported to four different Minneapolis-based supervisors; had numerous Minnesota-based contacts as the Medtronic

"Strategic Accounts" and Value Based HC Partnership lead; attended zoom meetings at least once per week with Minneapolis-based supervisors and personnel, sometimes five to ten per week; attended weekly zoom calls with Joe Hensley and Linda Engels, both Minneapolis-based, to give partnership updates; had zoom calls and phone calls on a weekly or daily basis with Minneapolis-based personnel in numerous departments, including Research and Development, Medical Affairs, Operating Unit leadership, and Data and IT teams; and attended quarterly Geoff Martha townhall meetings live broadcast, quarterly Dave Roberts Americas townhall meetings live broadcast, and quarterly value based healthcare partnership business reviews with John Liddicoat, Dave Roberts and other Americas leadership.

## FACTS

### A. PLAINTIFF'S STELLAR PERFORMANCE HISTORY WITH DEFENDANT

9. Plaintiff began her employment with Medtronic on August 5, 1999, as Cardiovascular Account Manager. The subsequent positions she held through December 2021 are Business Development Manager, Cardiac Rhythm Management ("CRM"); Therapy Sales Director, CRM; Chicago District Sales Manager, CRM; Regional Strategic Account Manager, Cardiac & Vascular Group ("CVG"); Senior Director, Strategic Account Manager CVG.

10. Plaintiff's final position with Defendant was Senior Director, Value Based Healthcare ("VBHC") Partnership Lead, Americas, which she held from December 2018 to December 2021.

11. Since the inception of her employment with Defendant twenty-two years ago, Plaintiff was an excellent employee for the company. She never received any disciplinary notices or poor performance reviews. On the contrary, Plaintiff excelled in leadership positions and made countless contributions during her significant tenure.

12. Defendant's promotion announcement in 2018 that Plaintiff had joined the Value-

Based Healthcare Partnerships team as Senior Director, Partnership Management, informed Plaintiff's colleagues,

> [Jan Pruitt-Kuklenski] is a dynamic strategic account and business leader with a track record of leading sales and market development teams, leveraging technologies in Medtronic's Cardiac & Vascular portfolio, and forming innovative strategic alliances. Jan has an authentic communication style coupled with a deep understanding of medical therapies, disease states, and solutions.

**B. DEFENDANT'S PROMISE TO CONTINUE PLAINTIFF'S EMPLOYMENT AT SAME TITLE AND COMPENSATION**

13. In early 2021, during an asserted Medtronic reorganization, Plaintiff was approached by Linda Engels, a Vice President with Defendant, requesting Plaintiff to stay on in order to assist the Company with pressing transition issues and to manage all four VBHC partnerships. Plaintiff was previously managing two of the four VBHC partnerships.

14. In an effort to help, Plaintiff agreed to forego the fifty-two week severance pay to which she would have otherwise been entitled, on the explicit condition that her compensation, compensation structure, and title would remain the same.

15. During a phone call on January 26, 2022, Linda Engels agreed to these conditions, and Plaintiff continued her employment accordingly.

**C. CHANGE IN PLAINTIFF'S COMPENSATION STRUCTURE**

16. Defendant emailed Plaintiff a new compensation plan on May 27, 2021, changing Plaintiff from the Medtronic Incentive Plan for non-commercial sales ("MIP") to a Sales Incentive Plan ("SIP"), a commission structured plan.

17. On June 1, 2021, Plaintiff responded to Defendant's change in her compensation structure and requested to return her compensation to its prior MIP structure to allow her and Medtronic "to be viewed as a trusted partner in our four VBHC Partnerships."

18. Plaintiff explained that the VBHC Partnerships' view of Medtronic as a "trusted

4

partner" was the "principle" on which the partnerships were founded:

> This request to return my compensation to its prior MIP structure has nothing to do with benefiting my standing but allowing me and Medtronic to be viewed as a trusted partner in our four VBHC Partnerships. It's the principal that these partnerships were founded and how we've differentiated us from the many strategic suppliers attempting to emulate Medtronic.

### D. PLAINTIFF'S REPORT OF DEFENDANT'S BREACH OF CONTRACT

19. In responding to Defendant's change in her compensation structure to the commission-structured SIP plan, Plaintiff contacted VBHP Americas Legal and to Joe Hensley, her direct boss, and Plaintiff detailed, in writing, how the SIP compensation plan failed to adhere to Medtronic's VBHP Master Strategic Affiliation Agreements with the four partnerships Plaintiff managed: Lehigh Valley Health Network, Medical University of South Carolina, ChristianaCare and Spectrum Health.

20. Plaintiff further clarified that the five-year VBHP Master Strategic Affiliation Agreements were negotiated and signed as non-commercial contracts, and that the understanding between Defendant and the four partners regarding the Master contracts was that Plaintiff's role was to represent Medtronic as a VBHC leader, unencumbered by a SIP, a sale, or product.

21. Plaintiff elaborated that a commission-based structure for her compensation violated the "clear and mutual understanding from both parties [to the Master Strategic Affiliation Agreements] that the commercial and VBHC work must remain separate":

> The five-year VBHP Master Strategic Affiliation Agreements were negotiated and signed as non-commercial contracts. There is/was a clear and mutual understanding from both parties that the commercial and VBHC work must remain separate. What has allowed me to build these open, trusting, and productive relationships is the understanding that my role is to represent Medtronic as a VBHC leader, unencumbered by a SIP, a sale, or product. My position with our VBHC Partners would not have been possible under any other compensation structure than the one I'm currently being paid.

5

### E. DEFENDANT'S TERMINATION OF PLAINTIFF'S EMPLOYMENT WHILE SHE WAS ON MEDICAL LEAVE

22. Due to an inner ear disease causing serious health problems, Plaintiff required surgery and time off to heal. She was approved for FMLA and began her leave on June 7, 2021.

23. Because Plaintiff's surgery was more extensive and invasive than her surgeon had anticipated, Plaintiff requested an extension of her leave until December 7, 2021, when she was prepared to return to work with no restrictions.

24. On September 15, 2021, upon receiving Plaintiff's request for an extension of her medical leave as a reasonable accommodation, Lisa López, Defendant's HR Director U.S. Markets, and Rochelle Harris, Senior Employee Relations Manager Latam and U.S. Market, informed Plaintiff Defendant was posting her position:

> In order to meet our ongoing business needs, we are posting your position for sourcing and recruitment purposes. If your position is still available when you are released to return to work full time, you may report back to that same position.

25. On October 6, 2021, Rochelle Harris informed Plaintiff by email that her position was "being filled." Ms. Harris wrote, "I'm writing to share that we have made an offer to a candidate this week, which means your position is being filled."

26. In this same email, Ms. Harris represented, "As I explained in my call with you and Matrix on the 15th September, Medtronic could not accommodate further leave and needs to fill your position."

27. In a phone call, Ms. Harris told Plaintiff her medical leave had caused Medtronic "hardship."

28. On December 2, 2021, Ms. Harris informed Plaintiff her job was not available for her to return to the next week. On December 8, 2021, Ms. Harris emailed Plaintiff, "Medtronic

6

does not offer severance when an employee's position is filled in these circumstances."

29. Defendant replaced Plaintiff on the Enterprise Accounts team with a younger individual with inferior job performance skills and qualifications, without any further accommodation for her disability. And while Ms. Harris had informed Plaintiff her medical leave caused Medtronic "hardship," Defendant did not assign the four VBHC Partnerships Plaintiff had managed to Plaintiff's replacement.

### F. DEFENDANT'S HISTORY OF UNLAWFULLY USING PROTECTED TRAITS IN MAKING EMPLOYMENT DECISIONS

30. Defendant engages in a systemic pattern and practice of utilizing reductions in force or reorganizations in order to change the makeup of its workforce, whether it be based on age, gender, or race.

31. While the goal of achieving diversity in leadership has recognized value, terminating high performing employees without justification or purpose other than to achieve diversity constitutes an adverse employment action based on age, gender, and race.

32. Defendant systemically uses age, sex, and race when making determinations on the individuals selected to be terminated when conducting reductions-in-force. Effective February 1, 2021, Defendant instituted a purported companywide reorganization.

33. Defendant claims Plaintiff's position was selected for elimination.

34. Plaintiff's position as Senior Director, Value Based Healthcare Partnership Lead, Americas/Pan-Medtronic was not eliminated. In reality, Defendant hired a younger, less qualified individual, to replace Plaintiff.

35. Defendant's companywide reorganization was nothing but an opportunity to change the makeup of its workforce, specifically using gender, race, and age-based characteristics in its decision-making process.

## CAUSES OF ACTION

### COUNT I
### DISPARATE TREATMENT AGE DISCRIMINATION
### IN VIOLATION OF THE MHRA

36. Plaintiff re-alleges each and every paragraph of this Complaint.

37. Defendant, through its managers, officials, employees and agents acting on its behalf and within the scope of their employment, engaged in unlawful employment practices with respect to Plaintiff and other older employees in violation of the MHRA, Minn. Stat. § 363A.01, *et seq*. These practices include discriminating against Plaintiff and other older employees with respect to terminating, hiring, tenure, compensation, terms, conditions, and/or privileges of employment because of age in violation of the MHRA; specifically, Minn. Stat. § 363A.08, subd. 2.

38. Plaintiff was qualified to perform the essential functions of her job.

39. Plaintiff's age was a motivating factor in Defendant's termination of her employment.

40. Plaintiff suffered an adverse employment action when Defendant notified her that her position was purportedly being eliminated, inducing her to forego the fifty-two week severance pay to which she was entitled, and then terminating her and replacing her with a younger, less qualified individual. The effect of the unlawful practices described above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her age.

41. Defendant engaged in the unlawful conduct described above intentionally and with reckless disregard for the rights of Plaintiff.

42. As a direct and proximate result of Defendant's conduct in violation of the MHRA,

Plaintiff has suffered and will continue to suffer loss of wages and benefits, has endured and will continue to endure impairment of reputation, personal humiliation, mental anguish, loss of enjoyment of life, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT II
## DISPARATE IMPACT AGE DISCRIMINATION
## IN VIOLATION OF THE MHRA

43. Plaintiff re-alleges and incorporates by reference each preceding paragraph as if fully rewritten here.

44. A disparate impact theory of proof may be used in claims of age discrimination claims under the MHRA.

45. Defendant claims that it used eligibility factors including "job eliminations or a relative evaluation of employee qualifications, specific experience and abilities and strengths necessary for the continuing work" in selecting which employees to terminate.

46. Defendant's facially neutral policies and practices in implementing the reduction in force disproportionately led to the termination of older employees, including Plaintiff, in violation of the law.

47. As a direct and proximate result of Defendant's conduct in violation of the MHRA, Plaintiff has suffered and will continue to suffer loss of wages and benefits, has endured and will continue to endure impairment of reputation, personal humiliation, mental anguish, loss of enjoyment of life, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT III
## DISABILITY DISCRIMINATION
## IN VIOLATION OF MHRA

48. Plaintiff re-alleges each and every paragraph of this Complaint.

49. Plaintiff has a "disability" as defined in Minn. Stat. § 363A.03, subd. 12. Plaintiff suffers from, has a record of, and/or was regarded by Defendant as suffering from the disabilities

described above, which materially limits her major life activities. Plaintiff's disability, record of disability, and/or perceived disability did not prevent her from performing the essential functions of her job, nor did it cause her to constitute a direct threat to the property or safety of others, as defined in Minn. Stat. § 363A.03, subd. 36(2). As such, she is a "qualified disabled person" as defined in Minn. Stat. § 363A.03, subd. 36.

50. The MHRA states in relevant part: "[I]t is an unfair employment practice for an employer, because of [. . .] disability [. . .] to [. . .] discharge an employee; or [. . .] discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn. Stat. § 363A.08, subd. 2.

51. Defendant, through its managers and officials acting on its behalf and within the scope of their employments, engaged in unlawful employment practices with respect to Plaintiff in violation of the MHRA, Minn. Stat. § 363A.01, *et seq*. These practices include terminating Plaintiff, a qualified disabled person, because of her known disabilities.

52. Plaintiff suffered an adverse employment action when Defendant failed to offer her a reasonable accommodation of extension of her medical leave.

53. Plaintiff suffered an adverse employment action when Defendant terminated her employment instead of offering her a reasonable accommodation.

54. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her status as an employee because of her disability.

55. The unlawful employment practices complained above was performed by Defendant with malice and/or reckless indifference to the MHRA, which protects Plaintiff.

56. As a direct and proximate result of Defendant's illegal conduct described above, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain

and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT IV
## PROMISSORY ESTOPPEL

57. Plaintiff re-alleges each and every paragraph of this Complaint.

58. Defendant induced Plaintiff's reasonable reliance by expressly promising Plaintiff that if she agreed to forego her entitlement to fifty-two weeks of severance pay Defendant would continue her employment at the same title, compensation structure, and compensation.

59. Defendant's promise was clear and definite.

60. Defendant knew and/or reasonably should have known that Plaintiff would rely on its representations that Defendant would continue Plaintiff's employment at the same title and compensation.

61. Plaintiff relied on Defendant's representations. Defendant's conduct and representations caused Plaintiff's reliance, which was detrimental.

62. Justice requires that Defendant be required to fulfill its promises to Plaintiff because Plaintiff forwent these other opportunities reliance of Defendant's promises and now cannot avail himself of those opportunities or other similar equity.

63. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or reckless indifference to the laws, which protect Plaintiff.

64. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT V
## VIOLATION OF FAMILY AND MEDICAL LEAVE ACT

65. Plaintiff re-alleges each and every paragraph of this Complaint.

66. The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). It also provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2).

67. Plaintiff had a serious health condition within the meaning of 29 C.F.R. § 825.113(a).

68. Plaintiff exercised her rights under the FMLA by requesting and taking medical leave for her own serious health condition.

69. By deciding to terminate Plaintiff shortly after her approved medical leave protected under the FMLA, and not allowing Plaintiff to substantially return to her employment in her position or a similar/equivalent one, Defendant violated Plaintiff's rights to which she was entitled in violation of 29 U.S.C. § 2615.

70. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise affected her status as an employee.

71. The unlawful employment practices complained above was performed by Defendant with malice and/or reckless indifference to the FMLA, which protects Plaintiff.

72. As a direct and proximate result of Defendant's illegal conduct described above, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation,

embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT VI
## RETALIATION IN VIOLATION OF THE
## MINNESOTA WHISTLEBLOWER ACT

73. Plaintiff re-alleges each and every paragraph of this Complaint.

74. The MWA prohibits retaliation against employees for making good-faith reports of violations of law. In particular:

> An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, locations, or privileges of employment because:
>
> The employee … in good faith, reports a violation or suspected violation, or planned violation to any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official. …

Minn. Stat. § 181.932, subd. 1.

75. The Minnesota Whistleblower Act applies to reports of violation of contract, which is a cause of action recognized by common law.

76. The MWA defines "report" as "a verbal, written, or electronic communication by an employer about an actual, suspected, or planned violation of a statute, regulation, or common law, whether committed by an employer or a third party." Minn. Stat. § 181.932, subd. 6.

77. As alleged above, Plaintiff engaged in statutorily protected conduct by reporting to Defendant what she, in good faith, believed to be violations of common law or rules adopted pursuant to law.

78. The laws which Plaintiff believes Defendant violated include, but are not limited to, breach of contract in violation of Minnesota common law.

79. Defendant retaliated against Plaintiff by terminating her employment and threatening

legal claims against her.

80. The adverse employment actions described herein constitute violations of the MWA, Minn. Stat. § 181.931, *et seq*.

81. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or reckless indifference to the laws that protect Plaintiff.

82. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment against Defendant for the following relief:

A. That the practices of Defendant complained of herein be adjudged, decreed, and declared to be violations of the rights secured to Plaintiff;

B. That Defendant be required to make Plaintiff whole for its adverse, discriminatory, retaliatory, and unlawful actions through restitution in the form of back pay, with interest of an appropriate inflation factor;

C. That Plaintiff be awarded front pay and the monetary value of any employment benefits she would have been entitled to in her position at Defendant;

D. That a permanent prohibitory injunction be issued prohibiting Defendant from engaging in the practices complained of herein this Complaint;

E. That Plaintiff be awarded compensatory damages, including loss of past and future income, emotional distress, loss of reputation, and related damages in an amount to be established at trial;

F.   That the Court award Plaintiff her reasonable attorneys' fees, costs, and disbursements pursuant to state law; and

G.   That the Court grant such other and further relief as it deems fair and equitable.

**Plaintiff demands her trial by jury on all counts where available.**

Dated: February __, 2022

**HALUNEN LAW**

*/s/ Clayton D. Halunen*
Clayton D. Halunen, #0219721
Pamela M. Spera #0275220
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
halunen@halunenlaw.com
spera@halunenlaw.com
*ATTORNEYS FOR PLAINTIFF*

ACKNOWLEDGMENT

The undersigned hereby acknowledges that, pursuant to Minn. Stat. § 549.211, sanctions, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated:  February __, 2022               /s/ *Clayton D. Halunen*
                                        Clayton D. Halunen